FILED
United States Court of Appeals
Tenth Circuit

October 29, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JEAN-GEORGES SCHWARTZ,

      Plaintiff–Appellant,

v.

iFREEDOM DIRECT CORPORATION,
f/k/a New Freedom Mortgage
Corporation; BRENT HANSEN; and
KEVIN GATES,

      Defendants–Appellees.

No. 10-2017
(D.C. No. 1:09-CV-00265-WDS-RLP)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **GORSUCH**, Circuit Judges and **ARGUELLO\*\***, District Judge.

      Jean-Georges Schwartz appeals the district court's grant of summary judgment for

the Appellees on his claims of fraud in the inducement, negligent misrepresentation,

---

     * This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 32.1.

     ** The Honorable Christine M. Arguello, United States District Judge for the
District of Colorado, sitting by designation.

unjust enrichment and rescission.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

Schwartz, a resident of France, is a businessman who owns 90% of the company Four Js Development.  Brent Hansen and Kevin Gates are managers in a mortgage company called iFreedom Direct Corporation ("iFreedom"), which was formerly known as New Freedom Mortgage Corporation ("New Freedom").

On September 24, 2002, New Freedom entered into a deposit agreement ("Deposit Agreement") with Eclipse Aviation.  New Freedom deposited $97,500 with Eclipse to "secure[ ] a delivery position for one Eclipse 500 jet," which was to be manufactured.  The $97,500 was to be applied to the purchase of the jet pursuant to an Eclipse 500 Purchase Agreement.

In January 2007, Schwartz sent an email inquiry to Greg Oswald, a sales representative for Eclipse, inquiring about ordering an Eclipse 500.  Oswald informed Schwartz that if he placed a deposit on January 18, 2007, he could expect delivery of an aircraft in the fourth quarter of 2008.  At the time, the price of the aircraft was $1,520,000, plus an inflation adjustment, which was tied into the U.S. Consumer Price Index ("CPI"), and the cost of options.

At around this time, Defendants decided to sell New Freedom's rights under the Deposit Agreement and advertised their intent.  On January 23, 2007, Schwartz contacted Hansen to inquire about the terms of purchasing the Deposit Agreement with Eclipse, in

order to assume New Freedom's position in the manufacturing line.

On January 24, 2007, Hansen emailed Schwartz and informed him that New Freedom would sell its position for $300,000—a $202,500 premium over the amount New Freedom had paid. Hansen also informed Schwartz that the price of the aircraft to be delivered by Eclipse was projected to be $1,271,000 (before options), plus an inflation adjustment per the Deposit Agreement, which was tied to the CPI. Hansen further informed Schwartz that Eclipse had advised him that the approximate delivery date of the aircraft would be in March 2008.

The same day, Hansen sent an email message to Schwartz and attached a draft of an "Assignment, Consent and Acknowledgement - Deposit Agreement" ("Assignment") from Eclipse as well as an email message showing the cost calculation. On January 25, Hansen sent an email message to Schwartz and attached copies of the Assignment, the Deposit Agreement, an operating cost comparison sheet, and two certificates that New Freedom had received from Eclipse for Schwartz's review and comment. On January 26, Schwartz responded to Defendant Hansen's email message and stated: "After having quickly reviewed your document I saw Chapter 4 section 16 that you can't assign or transfer your Agreement. Could you clarify? Thanks."

The same day, Lori Medrano, an attorney with Eclipse, sent an email message to Schwartz and consented to New Freedom's assignment to Schwartz. Medrano also attached a copy of the Assignment to her email message for Schwartz's review, and she explained the process for executing and processing the Assignment. Medrano informed

-3-

Schwartz that, "you will become the owner of record and Gates and Hansen will have no further rights or obligations under the Deposit Agreement to that aircraft."

On January 30, Hansen emailed Schwartz the escrow instructions and a signed and notarized copy of the Assignment for Schwartz's signature. In his email, Hansen stated: "If you are in agreement, please sign and return both to me." Later the same day, Schwartz responded: "Everything looks fine for me and find attached the signed paperwork back."

Pursuant to the Assignment, Schwartz accepted New Freedom's "assignment of the Deposit and of the Deposit Agreement." Schwartz agreed to assume and become solely responsible for all of New Freedom's duties and liabilities under the Deposit Agreement. Schwartz also agreed that he would have all of New Freedom's rights and interests under the Deposit and the Deposit Agreement, and that he would be deemed a party thereto as though Schwartz had originally effected the Deposit and executed the Deposit Agreement.

The Deposit Agreement defined "Final Delivery Price" as "the price to be established six months prior to aircraft delivery that will reflect List Price plus Economic Price Adjustment [EPA] for inflation to the date of delivery and other price adjustments at the discretion of Eclipse." It provided that a buyer could cancel the Deposit Agreement and obtain a refund of the deposit if the Final Delivery Price "exceeds the List Price published in the Eclipse 500 Deposit Program brochure, as adjusted for EPA, by more than 5%."

After execution of the Assignment, Eclipse exercised its discretionary right under the Deposit Agreement to increase the price of the Eclipse 500 jet by $450,000. Eclipse gave Schwartz the opportunity to cancel the Deposit Agreement and obtain a refund of the $97,500 deposit. Schwartz elected not to rescind the Deposit Agreement with Eclipse. Eclipse later filed for bankruptcy and the jet was never delivered.

Schwartz sued iFreedom as well as Hansen and Gates in their individual capacities, asserting claims under New Mexico law for fraud in the inducement, negligent misrepresentation, unjust enrichment and rescission. The district court granted iFreedom's motion for summary judgment on all Schwartz's claims.

## II

We review the district court's grant of summary judgment de novo. Shero v. City of Grove, 510 F.3d 1196, 1200 (10th Cir. 2007). Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1165 (10th Cir. 1998).

For substantially the same reasons set forth by the district court, we conclude that Schwartz has failed to present a genuine issue as to any material fact. The only point on which we differ from the district court's analysis relates to the duty of a party to read a contract.

Schwartz contends that the misrepresentation or omission which resulted in fraudulent inducement was Hansen's failure to specifically inform Schwartz in Hansen's

own words that the Deposit Agreement contained the unilateral price adjustment provision. In support of this argument Schwartz cites a number of New Mexico cases which stand for the proposition that, although a plaintiff may have a duty to read a contract, that duty is not absolute. E.g., Pattison v. Ford, 485 P.2d 361, 362 (N.M. Ct. App. 1971). The district court correctly found that there was no misrepresentation, so exceptions to the general duty do not apply in this case.

However, the parties' and the court's framing of this case as one regarding the duty to read the contract is flawed. Though not argued in these terms, the issue here is actually one of unilateral mistake. Schwartz's duty under New Mexico law to read the contract pertains to the contract between himself and Gates and Hansen (the Assignment) not the contract which he purchased from them (the Deposit Agreement). Yet Schwartz's ignorance in this case relates to the terms of the contract with Eclipse, the Deposit Agreement, not his contract with the Appellees. Put differently, Schwartz was ignorant as to certain characteristics of the object of his contract with the Appellees, but not as to the contract itself. His ignorance is analogous to that of a purchaser in a sales contract who fails to inspect the goods he purchased. Therefore, the issue is more accurately described as unilateral mistake.

Under New Mexico law and contract principles, a "[c]ourt will not void a contract for a unilateral mistake except where the mistake is basic and material to the agreement, and the other party knew or reasonably should have known of the mistake." Jacobs v. Phillippi, 697 P.2d 132, 134-35 (N.M. 1985); see Restatement (Second) of Contracts

-6-

§ 153 (1981).  Unilateral mistake may also be excused if the mistake resulted from fraudulent misrepresentation.  Cf. Filchum Constr. Co. v. Cent. Glass & Mirror, Co., 611 P.2d 221, 222 (N.M. 1980).  Schwartz has not argued, nor has he presented any facts suggesting that Hansen and Gates knew of or should have known of his ignorance as to the price adjustment term in the Deposit Agreement.  To the contrary, the undisputed facts in the record indicate that Hansen sent Schwartz the Deposit Agreement via email and Schwartz asked questions about the Deposit Agreement, indicating that he had read it.  Therefore, Appellees could have reasonably expected Schwartz to be aware of the Deposit Agreement's terms, including the unilateral price adjustment provision.  Additionally, as we indicated above, the district court rightly found that there was no misrepresentation, so the second exception does not apply.  Thus, there are no grounds to void the contract on the basis of Schwartz's unilateral mistake.

### III

For the foregoing reasons, we **AFFIRM** the grant of summary judgment.

Entered for the Court,

Carlos F. Lucero
Circuit Judge