**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

WILLIAM DEERE,

     Plaintiff - Appellant,

v.

XPO LOGISTICS FREIGHT, INC.; XPO
LOGISTICS, INC.,

     Defendants - Appellees.

No. 19-1069
(D.C. No. 1:17-CV-01173-RM-KLM)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **PHILLIPS**, **McHUGH**, and **EID**, Circuit Judges.

William Deere appeals the grant of summary judgment in favor of XPO

Logistics Freight, Inc. and XPO Logistics, Inc. (collectively, XPO) on his claims of

sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964

(Title VII), 42 U.S.C. §§ 2000e to 2000e-17, and age discrimination and retaliation

under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C.

§§ 621-634. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. BACKGROUND

On September 9, 2015, XPO announced plans to acquire Conway Freight, Inc. (Conway). In preparation for the acquisition, XPO, which "expected redundancies in the sales function," "engaged an outside consultant to evaluate the profitability of individual Account Executives for a planned reduction-in-force" (RIF). Aplt. App. Vol. I at 137. Conway had fifteen account executives in the Denver region, and they "had the same duties and were answerable to the same chain of command within the same personnel structure." Aplt. App. Vol. III at 661. XPO did not provide its consultant, McKinsey & Company (McKinsey), with demographic information, such as age or gender, for the account executives. McKinsey recommended using year-over-year profit as the metric to determine which account executives in the Denver region to terminate. Greg Ritter, XPO's Chief Customer Officer, agreed with the recommendation.

Upon closing of its acquisition of Conway on October 30, 2015, XPO "cut 10% of the [total] sales force, representing 36 people." Aplt. App. Vol. I at 106. In the Denver region, XPO terminated three account executives—Mr. Deere, who had the lowest year-over-year profit growth; Debbie James, who had the second lowest; and William Diaz, who had the third lowest. At the time, Mr. Deere was 45 years old, Ms. James was 42, and Mr. Diaz was 33. Prior to the RIF, twelve of the fifteen account executives were male, and eleven were over 40. After the RIF, ten of the twelve account executives were male; nine were over 40, including one over 70 and two over 60; and the average age increased from 46.2 to 47.75.

Shortly after the RIF, Joe Engle, one of the remaining account executives in the Denver region, left the company.  XPO posted that position on November 25. XPO's recruiting coordinators, who are tasked with screening applications, typically stop moving applicants forward once there are fifteen applications pending for the hiring manager's review.  In this case, they forwarded sixteen applications, which were received between November 30 and December 15.  All applications received after December 15 were rejected without being reviewed by Steve Bernier, XPO's Director of Sales and the hiring manager for this position.  Mr. Deere applied on December 17, by which point Mr. Bernier had already interviewed multiple candidates and had twice interviewed 51-year-old Melody McGinnis.

While Mr. Bernier was considering applicants for Mr. Engle's former position, but before Mr. Deere applied, Mr. Deere's counsel sent an email on December 7 to Jennifer Warner, XPO's Vice President and General Counsel: (1) requesting an opportunity "to conduct an interview with the person or persons who selected [Mr. Deere] for termination instead of the significantly younger newcomer in the same unit"; and (2) alleging that "age discrimination was involved in [Mr. Deere's] firing" and that "[t]his appears to be a rather straightforward breach of the federal Age Discrimination in Employment Act."  Aplee. Supp. App. Vol. II at 425.[1]

---

[1] Mr. Deere's counsel attempted to include Mr. Bernier and Kevin Huner, XPO's Director of Human Resources, but XPO asserted they did not receive the email.  Mr. Bernier testified he was unaware of the email, and the email address for Mr. Huner misspelled his name as "Hunter."  Aplt. App. Vol. I at 134.  On appeal, Mr. Deere continues to spell the name "Hunter."  *E.g.*, Aplt. Opening Br. at 34, 42.

On December 9, Mr. Bernier decided he would offer the job to Ms. McGinnis. After he sought and obtained approval from Human Resources, and after she met with two more account executives, Mr. Bernier offered her the job on December 21, and she accepted. The position entailed two territories, including a portion of Mr. Deere's former territory, which had been split and distributed among other account executives after his termination. Mr. Bernier had previously asked management to consider re-hiring Mr. Deere but did not "think of" him for this job, *id.* at 389.

A few weeks later, Mr. Bernier "determin[ed] that business had suffered from the [RIF] and that [XPO] needed to add another Account Executive to the Region." Aplt. App. Vol. I at 83; *see also id.* at 99 ("[XPO] realized . . . that they had made a mistake and that they had cut too deep and needed to . . . bring additional salespeople on board."). XPO re-created Mr. Deere's former position, with a territory largely mirroring his former territory. After conducting interviews, Mr. Bernier offered the job to 46-year-old David Gerdes, who accepted on January 19. Mr. Deere did not apply for this job, and Mr. Bernier was not aware he was interested in the position.[2]

In 2017, Mr. Deere brought an action against XPO based on his termination as part of the RIF and XPO's subsequent failure to rehire him, raising claims of sex and

---

[2] Mr. Deere claims XPO never posted this position and bypassed its standard hiring procedures. But Mr. Bernier testified the position was, in fact, posted, *see* Aplt. App. Vol. I at 58, whereas Mr. Deere and Ms. McGinnis testified only that they did not recall *seeing* the position posted, *see* Aplee. Supp. App. Vol. II at 358, 405.

age discrimination and retaliation under Title VII and the ADEA. The district court granted XPO's motion for summary judgment. Mr. Deere timely appealed.

## II. DISCUSSION

Mr. Deere contends the district court erred in denying his motion to strike XPO's evidentiary submission and in granting summary judgment in favor of XPO.

### A. Mr. Deere's Motion to Strike

First, Mr. Deere argues XPO violated Fed. R. Civ. P. 26(a) by not disclosing the identity of: (1) Cindy Anderson, XPO's Human Resources Manager; (2) Terry Riordan, XPO's Director of Talent Management and Recruiting; and (3) McKinsey, which he claims was "an undisclosed outside consultant who was a co-determiner that plaintiff should be fired," Aplt. Opening Br. at 18 (emphasis omitted). He contends any evidence from Ms. Anderson, Mr. Riordan, and McKinsey should have been stricken under Fed. R. Civ. P. 37(c)(1). We disagree.

#### 1. Standard of Review

"We review a district court's evidentiary rulings at the summary judgment stage for abuse of discretion." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006). A court abuses its discretion when it "clearly err[s] or venture[s] beyond the limits of permissible choice." *Hancock v. AT&T Co.*, 701 F.3d 1248, 1262 (10th Cir. 2012) (internal quotation marks omitted).

5

## 2. Analysis

Mr. Deere bases his argument regarding Ms. Anderson, Mr. Riordan, and McKinsey entirely on XPO's failure to disclose their identities.[3] Specifically, he contends that XPO failed to disclose their identities under Fed. R. Civ. P. 26(a) and that any averments based on information from Ms. Anderson, Mr. Riordan, and McKinsey should have been excluded under Fed. R. Civ. P. 37(c)(1).

Subject to certain exceptions, Fed. R. Civ. P. 26(a) requires a party to provide other parties with an "Initial Disclosure" containing, *inter alia*, the identity "of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). As a sanction for violating this rule, "the party is not allowed to use that information or witness to supply evidence on a motion, . . . unless the failure was substantially justified or is *harmless*." Fed. R. Civ. P. 37(c)(1) (emphasis added). Courts have discretion in assessing harmlessness and should consider whether: (1) the opposing party is prejudiced; (2) the prejudice can be cured; (3) the proceedings would be disrupted; and (4) the party acted in bad faith. *See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

---

[3] Mr. Deere also raised hearsay arguments and objected to other submissions, which the district court rejected. He has not challenged those rulings on appeal. *See Burke v. Regalado*, 935 F.3d 960, 995 (10th Cir. 2019) ("The failure to raise an issue in an opening brief waives that issue." (internal quotation marks omitted)).

6

### a. Ms. Anderson and Mr. Riordan

XPO included with its summary-judgment motion several supporting documents, including: (1) an affidavit from Ms. Anderson providing demographic information related to the RIF and the account executives hired thereafter; and (2) an affidavit from Mr. Riordan describing the application procedures and timelines for the hiring of Ms. McGinnis and Mr. Gerdes. Mr. Deere objected on the ground that Ms. Anderson and Mr. Riordan had not been disclosed under Fed. R. Civ. P. 26(a). XPO agreed they had not been disclosed but (1) explained it included the affidavits because XPO's Regional Director of Human Resources Donna Lenahan, who was disclosed, was unavailable when the motion was filed; and (2) provided a declaration from Ms. Lenahan certifying the same factual statements in the disputed affidavits.

The district court found the factors for harmlessness "weigh[ed] heavily against striking" the affidavits. Aplt. App. Vol. III at 655. First, Mr. Deere did not move to strike the portion of Ms. Lenahan's declaration that "contain[ed] the identical factual content" as provided in the affidavits. *Id.* As the court properly found, "[Mr.] Deere cannot be prejudiced or disrupted by what he does not dispute, and he is apparently satisfied that XPO cured his objection by providing the same information from another corporate source." *Id.* The court also found no bad faith, noting that "XPO offered to have [Ms.] Lenahan provide the statements previously filed through [Ms.] Anderson and [Mr.] Riordan *before* [Mr.] Deere responded to the [summary-judgment] motion" and that he rejected "this olive branch." *Id.* & n.6.

7

Mr. Deere offers no argument on appeal explaining how the court erred in its analysis. He quotes Fed. R. Civ. P. 37(c)(1) and cites *Woodworker's Supply* but does not actually address the factors weighed by the district court. "This court . . . will not craft a party's arguments for him." *Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999). Accordingly, Mr. Deere has not shown that the district court abused its discretion.

### b. McKinsey

Next, Mr. Deere contends XPO failed to timely disclose McKinsey's identity as the outside consultant. But he does not identify any specific document that the court erred in considering. Even if we assume Mr. Deere is contesting the refusal to strike submissions from Mr. Ritter, who worked with McKinsey on the RIF and described McKinsey's role, the court did not abuse its discretion.

Through Mr. Ritter's declaration submitted with XPO's reply, XPO: (1) disclosed for the first time McKinsey was the outside consultant; and (2) clarified that Mr. Ritter was the decision-maker, whereas XPO's discovery responses and Mr. Ritter's prior affidavit suggested, at least according to Mr. Deere, that the consultant was a "co-decision-maker," Aplt. Opening Br. at 20 (emphasis omitted). Mr. Deere, thus, insists that XPO "hid[] the most important witness in the entire case," *id.* at 22, and that "the trial court pooh-poohed the glaring nondisclosure," *id.* at 21.

Notwithstanding Mr. Deere's "hyperbolic name-calling," Aplt. App. Vol. III at 657, the district court found no impropriety. Although Mr. Deere's argument was

8

"not clearly presented," the district court interpreted his motion to strike as seeking the exclusion of sections of Mr. Ritter's affidavit and declaration "on the bases of discovery violations, hearsay, and internally inconsistent representations by XPO." *Id.* at 658. On appeal, however, Mr. Deere appears to base his argument, as with Ms. Anderson and Mr. Riordan, on Fed. R. Civ. P. 37(c)(1). Nevertheless, the district court's analysis applies with equal force to Mr. Deere's current argument.

First, the court properly found McKinsey's involvement "immaterial . . . because XPO concedes that *it* terminated [Mr.] Deere, and it is XPO's animus (or lack of it)—not McKinsey's—that is being tested in this case." *Id.* The court also correctly concluded XPO's discovery responses and Mr. Ritter's statements could be harmonized. Taken together, they show that XPO retained McKinsey to assist in the RIF, that Mr. Ritter and McKinsey determined who should be terminated in the RIF, and that Mr. Ritter accepted and implemented McKinsey's recommendations.

Moreover, the court properly noted that to the extent Mr. Deere "lost the opportunity to glean discovery from McKinsey, his troubles [were] self-inflicted." *Id.* at 659. Although he was "aware of the 'outside consultant' since at least 2017, many months before the discovery deadline on April 1, 2018," he never "attempted to compel a more specific interrogatory response from XPO to supply" the name of the consultant. *Id.* In July, after the discovery deadline but before filing his opposition to summary judgment, Mr. Deere emailed XPO's counsel and asked whether they had disclosed the consultant's name. But even then, he did not ask for the name, and

9

XPO responded that disclosure was not required because it did not intend to "'use'" the consultant "within the meaning of Rule 26." *Id.* at 618.[4]

Assuming without deciding that McKinsey should have been disclosed under Fed. R. Civ. P. 26(a), there was no prejudice, disruption, or bad faith to warrant exclusion under Fed. R. Civ. P. 37(c)(1). *See Woodworker's Supply*, 170 F.3d at 993. The district court did not abuse its discretion in denying Mr. Deere's motion to strike.

### B. XPO's Motion for Summary Judgment

Next, Mr. Deere contends the district court erred in granting summary judgment to XPO on his claims of age discrimination regarding his termination and sex discrimination and retaliation with XPO's failure to rehire him.[5] We disagree.

### 1. Standard of Review

This court "review[s] summary judgment decisions de novo," "view[ing] the evidence and draw[ing] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Talley v. Time, Inc.*, 923 F.3d 878, 893 (10th Cir. 2019)

---

[4] Mr. Deere insists he would have "take[n] depositions from key witnesses at McKinsey" if only he had known it was the consultant. Aplt. Opening Br. at 21. But he never even sought to depose Mr. Ritter, who was the actual decision-maker.

[5] The court interpreted the complaint as stating three claims: (1) "ADEA unlawful termination"; (2) "Title VII failure-to-hire"; and (3) Title VII retaliation premised on XPO's failure to re-hire him. Aplt. App. Vol. III at 667. Mr. Deere does not argue age discrimination with respect to XPO's failure to rehire him—and for good reason, since both Ms. McGinnis and Mr. Gerdes were older than him. This claim, therefore, is waived. *See Burke*, 935 F.3d at 995. He argues the merits of "his claim of sex discrimination as to his termination." Aplt. Opening Br. at 25 (emphasis omitted). But he has not challenged the court's determination that he did not plead such a claim and only pleaded *age* discrimination in his termination. We, therefore, decline to address his Title VII termination claim. *See Burke*, 935 F.3d at 995.

10

(internal quotation marks omitted). Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material only if it might affect the outcome," and a dispute "is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmov[ant]." *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1265-66 (10th Cir. 2015) (citations and quotations omitted). If the movant shows there is no genuine issue of material fact, the nonmovant then must "set forth specific facts from which a rational trier of fact could find for the nonmovant." *Talley*, 923 F.3d at 893-94 (internal quotation marks omitted). A nonmovant cannot rely on "conclusory allegations," *Salehpoor v. Shahinpoor*, 358 F.3d 782, 786 (10th Cir. 2004), or "mere speculation," *Bones v. Honeywell Int'l, Inc*., 366 F.3d 869, 875 (10th Cir. 2004).

### 2. ADEA Discrimination Claim

Mr. Deere contends the district court erred in granting summary judgment to XPO on his claim of age discrimination with respect to his termination. He contends he was terminated because of his age whereas younger employees were retained.

Under the ADEA, an employer may not "discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). We apply the burden-shifting framework under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), to Mr. Deere's ADEA claim. *See Beaird v. Seagate Tech., Inc.,* 145 F.3d 1159, 1165 (10th Cir. 1998).

11

First, an employee alleging age discrimination in a RIF termination must show: (1) he is at least 40 years old, *see* 29 U.S.C. § 631(a); (2) he "was doing satisfactory work"; (3) he "was discharged despite the adequacy of [his] work"; and (4) "there is some evidence the employer intended to discriminate against [him] in reaching its RIF decision." *Beaird*, 145 F.3d at 1165. The fourth element may be satisfied by "[e]vidence that an employer fired qualified older employees but retained younger ones in similar positions." *Id.* at 1166 (internal quotation marks omitted).

Once a plaintiff establishes a prima facie case of age discrimination, the defendant may rebut the presumption of discrimination "by asserting a facially nondiscriminatory reason for the employee's termination." *Id.* at 1165. The burden then shifts to the plaintiff to "present evidence that that proffered reason was pretextual." *Id.* (internal quotation marks and citation omitted). A plaintiff may establish pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005) (per curiam) (internal quotation marks omitted). In RIF cases, a plaintiff can show pretext by showing: "(1) his own termination does not accord with the RIF criteria, (2) [the] RIF criteria were deliberately falsified or manipulated in order to terminate him, or (3) that the RIF generally was pretextual." *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1193 (10th Cir. 2006).

Assuming without deciding that Mr. Deere established a prima facie case, he has not shown pretext. First, he offers no argument that his termination did not accord with the RIF criteria or that the criteria were falsified or manipulated. He also has not shown the RIF was "so idiosyncratic or questionable that a factfinder could reasonably find that [it was a] pretext for illegal discrimination." *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1106 (10th Cir. 2008) (internal quotation marks omitted).

Instead, he claims "there was no true RIF" because XPO added Ms. McGinnis and Mr. Gerdes and his position and territory were not eliminated, contrary to what XPO told him. Aplt. Opening Br. at 14. But "the test for position elimination is not whether the responsibilities were still performed, but . . . whether the responsibilities still constituted a single, distinct position." *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996). As in *Furr*, Mr. Deere's position was eliminated even though his territory and "responsibilities were divided up" among retained employees. *Id.*

Moreover, Ms. McGinnis replaced Mr. Engle, not Mr. Deere, contrary to his assertion that "[Ms.] McGinnis got plaintiff's former job fast, if not real fast." Aplt. Opening Br. at 28 (emphasis omitted). And although Mr. Gerdes replaced Mr. Deere, that occurred only after XPO realized it cut too deeply with the RIF and needed to *recreate* Mr. Deere's position. XPO may have miscalculated with its RIF, but Mr. Deere has not shown XPO did not honestly expect redundancies and believe the RIF was necessary. *See DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970-71 (10th Cir. 2017) (noting that "[e]vidence that the employer should not have made the termination decision—for example, that the employer was mistaken or used poor

13

business judgment—is not sufficient to show" pretext and that "the relevant inquiry is whether the employer honestly believed those reasons and acted in good faith upon those beliefs" (internal quotation marks and citations omitted)).

Mr. Deere also does not dispute that year-over-year profit growth was a non-discriminatory metric for the RIF or that he ranked last in that metric. Instead, he insists he ranked higher in other metrics than several non-RIFed employees, including two younger account executives. He, thus, challenges XPO's use of "only a certain single sales statistic to support its firing of plaintiff." Aplt. Opening Br. at 43. But an employer may "conduct its RIF according to its preferred criteria of performance . . . and we will not disturb that exercise of defendant's business judgment." *Beaird*, 145 F.3d at 1169. In *Beaird*, we rejected a claim that different criteria would have better reflected performance and that the plaintiff "would have been retained if different RIF criteria had been used." *Id.* "The ADEA does not require [an employer's] business decisions to be wise—just nondiscriminatory." *Id.*

Finally, the other RIFed employees were *younger* than Mr. Deere, including one of the youngest account executives. Of the twelve account executives after the RIF, nine were over 40, including three over 60. And the percentage over 40 increased, from 73% (11 out of 15) to 75% (9 out of 12). The average age of the account executives also increased, from 46.2 to 47.75. Further, a greater percentage of account executives under 40 were terminated—25% (1 out of 4) compared to 18%

14

(2 out of 11) of those over 40.[6]  Ultimately, while the metric was age-neutral, the account executives over 40 fared better in the RIF than their younger counterparts.

Because Mr. Deere has not shown pretext, the court properly granted summary judgment in favor of XPO on his ADEA discrimination claim.

### 3.  Title VII Discrimination and Retaliation Claims

Next, Mr. Deere contends the court erred in granting summary judgment to XPO on his claims of sex discrimination and retaliation under Title VII.  *See* 42 U.S.C. § 2000e-2(a)(1) (stating employers may not "fail or refuse to hire" an applicant "because of such individual's . . . sex").  As discussed above, Mr. Deere's attorney sent an email to XPO on December 7, 2015, alleging discrimination, and two days later, Mr. Bernier decided to offer Mr. Engle's former job to Ms. McGinnis. Mr. Deere claims XPO both retaliated against him and engaged in sex discrimination when it "failed to rehire him back into his former job and territory" and, instead, hired Ms. McGinnis.  Aplt. Opening Br. at 27.

As with his ADEA claim, we evaluate Mr. Deere's Title VII claims under the *McDonnell-Douglas* burden-shifting framework.  *See Singh v. Cordle*, 936 F.3d 1022, 1037 (10th Cir. 2019) (Title VII discrimination); *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016) (retaliation).  Specifically, to satisfy a prima facie case of Title VII discrimination based on a failure to rehire, Mr. Deere must show:

---

[6] "[S]tatistical evidence on its own will rarely suffice to show pretext."  *Luster v. Vilsack*, 667 F.3d 1089, 1094 (10th Cir. 2011) (internal quotation marks omitted). But here, the statistics only further highlight the absence of age discrimination.

15

(1) he "belongs to a protected class"; (2) he "applied and was qualified for a job for which the employer was seeking applicants"; (3) he was rejected "despite being qualified"; and (4) "the position remained open and the employer continued to seek applicants from persons of [his] qualifications" after his rejection. *Fischer v. Forestwood Co.*, 525 F.3d 972, 982-83 (10th Cir. 2008) (internal quotation marks omitted). To establish a prima facie case of Title VII retaliation, Mr. Deere must show "(1) []he engaged in protected opposition to Title VII discrimination; (2) []he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1227 (10th Cir. 2008) (internal quotation marks omitted). If he satisfies his burden of showing a prima facie case of discrimination or retaliation, the burden shifts to XPO to show a legitimate, non-discriminatory reason for the disputed action and then back to Mr. Deere to show that the reason was pretextual. *See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1166-67 (10th Cir. 2007).

The court determined the Title VII discrimination and retaliation claims are "best viewed together because the only alleged act of retaliation is XPO's failure to re-hire [Mr.] Deere." *Id.* at 668 n.24; *see also* Aplt. App. Vol. III at 667 ("The only act of retaliation conceivably alleged is XPO's failure to rehire [Mr.] Deere into the same or similar jobs." (internal quotation marks and alterations omitted)). Mr. Deere has not argued otherwise, so we also will treat these claims together.

16

Assuming without deciding that Mr. Deere established a prima facie case of Title VII discrimination and retaliation, we agree with the district court that he has not shown pretext. Ms. McGinnis was qualified for the position and had been recommended by other XPO employees. Mr. Deere concedes that Mr. Bernier selected her for the job on December 9, 2015, *see* Aplt. Opening Br. at 28, 35,[7] and that he did not apply until eight days later on December 17. It also is undisputed that Mr. Deere's application was not forwarded to Mr. Bernier and that Mr. Bernier did not see his application. Additionally, Mr. Deere admitted at his deposition that he did not believe Mr. Bernier discriminated against him. Mr. Bernier even wrote him a positive recommendation letter. Mr. Deere reiterates his complaints with the RIF and suggests it was a pretext to replace him with Ms. McGinnis. But, as discussed above, his challenges to the RIF are without merit, and "mere conjecture that an employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Santana v. City & Cty. of Denver*, 488 F.3d 860, 864-65 (10th Cir. 2007) (internal quotation marks omitted). Finally, belying a claim of sex discrimination is that less than a month after Ms. McGinnis was hired, the very next account executive position was offered to a male, Mr. Gerdes.

Mr. Deere has not shown "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [XPO]'s proffered legitimate reasons for" hiring

---

[7] In his reply brief, Mr. Deere questions the accuracy of this date. *See* Aplt. Reply Br. at 10. But a party generally "waives . . . arguments raised for the first time in a reply brief," and "[w]e see no reason to depart from that rule here." *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) (internal quotation marks omitted).

17

Ms. McGinnis instead of Mr. Deere "that a reasonable factfinder could rationally find them unworthy of credence." *Jaramillo*, 427 F.3d at 1308. Because Mr. Deere has not shown pretext, the district court properly granted summary judgment in favor of XPO on his Title VII discrimination and retaliation claims.

## III.    CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Carolyn B. McHugh
Circuit Judge